

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| THOMAS DION DEMARRIAS, | 1:22-CV-1003-CBK |
| Petitioner, | |
| vs. | **MEMORANDUM AND ORDER** |
| UNITED STATES, | |
| Respondent. | |

Petitioner Thomas DeMarrias ("petitioner") motions this Court to vacate and set aside his two federal convictions for which he knowingly and voluntarily pleaded guilty pursuant to 28 U.S.C. 2255. Doc. 1. Petitioner, who is currently confined at the United States Penitentiary in Marion, Illinois, pleaded guilty to Abusive Sexual Contact (18 U.S.C. §§ 1153, 2244(a)(1), 2246(3)) and Felony Child Abuse (18 U.S.C. § 1153, and SDCL §§ 26-8A-2, 26-10-1) and was sentenced on November 4, 2019, to 120 months custody for each sentence, with the two counts to run consecutively. See 1:18-CR-10019-CBK-1 ("Original Proceeding"). The United States Court of Appeals for the Eighth Circuit affirmed the sentence on November 4, 2020. See United States v. DeMarrias, 833 Fed. Appx. 30 (8th Cir. 2020) (*unpublished*). The mandate issued on November 25, 2020. Original Proceeding, doc. 113. I have conducted an initial review of the motion pursuant to Rule 4 of the Rules Governing § 2255 Proceedings.

Mr. DeMarrias now contends that his guilty pleas were not in fact knowing and voluntary because of ineffective assistance of counsel during his trial proceedings. Additionally, petitioner couches a brief argument under the banner of "actual innocence," yet not explaining whether he means to use actual innocence as a gateway to plead procedurally defaulted claims that would otherwise be blocked before this Court under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), or rather a

freestanding innocence claim under Herrera v. Collins, 506 U.S. 390 (1993). Both sets of arguments are addressed.

## I.  BACKGROUND

The underlying facts behind petitioner's guilty pleas stretch to the outer limits of mankind's cruelty. On appeal, the Eighth Circuit referred to these circumstances as "horrific." DeMarrias, 833 Fed. Appx. at 31. For approximately four years, DeMarrias "psychologically, sexually, and physically abused his two minor stepdaughters." Id. To somehow make matters even worse, these two girls were only four and eight-years-old when the abuse began.[1] This abuse was not one-off events; rather, it would take place "on average four times a day five days a week." Id. Making a mockery of contract law, DeMarrias forced his three young stepchildren to sign "contracts" which would "govern" what would happen if they got into trouble. Id. One example included "requir[ing] a child who got into trouble to pick one of their siblings to receive a beating. "If the child was unwilling or emotionally unable to pick a sibling to be beaten – (which was usually the case) –DeMarrias would beat all three." Id. Petitioner also would force the children to brawl against each other, which one child opined were attempts to try and drive wedges between the children.

This matter was raised to law enforcement back in January 2012 when the victims' mother, Ms. Chantel Brant, caught DeMarrias laying on her daughter M.M.B's bed. Petitioner was masturbating while holding M.M.B's underwear next to his mouth and nose. DeMarrias was promptly kicked out of the home and Brant called the police. After fleeing their home in Rehab Village on the Lake Traverse Indian Reservation in South Dakota and eventually residing in Mitchell, South Dakota, M.M.B. began unraveling the horrors she endured. Not only was she physically abused, but also molested throughout her childhood from individuals besides DeMarrias, such as her grandfather's brother who began sexually abusing the young girl when she was only in kindergarten. Other individuals included her grandfather, Mr. Roland Brant, as well as the defendant.

---

[1] This is to put aside the physical abuse inflicted on petitioner's wife and stepson, which is not relevant to this matter.

2

To take just one example of how DeMarrias treated M.M.B.: the young girl was forced to watch pornography with him, stating that this is what happens to nasty girls who wear short skirts. When it came to their physical abuse, M.M.B. and her sister M.J.D. would have to "choose" if they would want the beating to be from a hanger or a belt covered in metal studs. No place was safe in the household. Not only would DeMarrias sexually abuse M.M.B. (and be upset if she showed clear signs of pain) by inserting his fingers into her vagina when she was alone, but also watch her shower through a hole in the bathroom wall. Not content with being the only cause of sexual trauma, DeMarrias even forced M.M.B. and M.J.D. to touch each other sexually while taking a shower, with threats of beatings if they did not comply. And, venturing far beyond the civilized mind, DeMarrias even forced M.M.B. – at 10 or 11-years-old – to put a nail into her own anus.

M.M.B. was not alone in the abuse. In addition to the constant beatings with the hangar and belt, M.J.D. recalls how the petitioner would order her to lay on the bed but not fall asleep. Eventually, though, once M.J.D. did slip into unconsciousness she would be awoken by the enraged DeMarrias punishing her with further beatings, from which he took pleasure inflicting. To call these actions depraved would be a gross understatement. Tragically, this is not even the end of this house of horrors.

M.J.D. reported how petitioner would place tacks around her bed while she was sleeping. Why? So she would step on them when getting out of bed. Once M.J.D. was given a jelly donut. She decided that she did not like the filling. So, she squeezed the jelly filling into a soiled diaper in their garbage and thought that would be the end of this particular story. But she lived with DeMarrias, a man seemingly bent on causing as much pain and horror as he could. Taken it as a personal afront, the petitioner forced M.J.D. to retrieve the diaper and eat the jelly out of it, one of the many acts in which he delighted.

These children are survivors. They endured day after agonizing day confined to a "prison" with a cruel and inhumane warden, a man committed to causing unspeakable pain. This was from physical torment to sexual trauma to forcing children to fight and

molest each other; these young girls endured more than any person should in a lifetime, let alone as children. This Court has presided over the darkest acts man can cause against another, but the actions underlying DeMarrias' two guilty pleas remain among the worst.

"The right to the effective assistance of counsel at trial is a bedrock principle in our justice system." Martinez v. Ryan, 566 U.S. 1, 12 (2012). All defendants are owed meaningful representation, and as this Memorandum and Order explains, Mr. DeMarrias was awarded constitutionally sound trial counsel when he pleaded guilty to these two counts.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

#### 1. *Standard of Review*

To support a claim of ineffective assistance of counsel, a two-prong test must be met. Mr. DeMarrias must show that his trial counsel's performance "'was deficient and that [he] suffered prejudice as a result.'" O'Neil v. United States, 966 F.3d 764, 770 (8th Cir. 2020) (alteration in original) (quoting Anderson v. United States, 762 F.3d 787, 792 (8th Cir. 2014). See Strickland v. Washington, 466 U.S. 668, 687–96 (1984). The petitioner must prove prejudice by showing "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Donelson v. Steele, 16 F.4th 559, 570 (8th Cir. 2021) (quoting Strickland, 466 U.S. at 694). In the context of a guilty plea, petitioner must show that "'but for counsel's errors, [DeMarrias] would not have pleaded guilty and would have insisted on going to trial.'" United States v. Sisk, 999 F.3d 631, 635 (8th Cir. 2021) (quoting United States v. Cruz, 643 F.3d 639, 642 (8th Cir. 2011)). The heavy burden of establishing ineffective assistance of counsel is on the petitioner. Langford v. United States, 993 F.3d 633, 637 (8th Cir. 2021); Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 6 (2003).

## 2. *Trial Counsel was Not Constitutionally Defective*

Petitioner contends he would not have pleaded guilty if he had effective counsel. Specifically, DeMarrias argues constitutionally sound trial counsel must have sought expert testimony concerning purportedly unfounded and false abuse allegations raised against him, and with such assistance he would not have pleaded guilty. Mr. DeMarrias is now contending, for the first time, that his plea could not have been given knowingly and voluntarily because trial counsel supposedly "pressured him into taking the plea deal even though [petitioner] continued to assert his innocence." MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. 2255 TO VACATE AND SET ASIDE CONVICTION, doc. 3 at 5. Because any concerns of whether DeMarrias' guilty plea was knowing and voluntary were assuaged in his prior exchanges with the Court, such allegations hold no merit.

Petitioner's waiver of his Constitutional right to insist the charges against him be tried to a jury can only be waived by a guilty plea if it was done "knowingly and voluntarily." United States v. Grady, 931 F.3d 727, 729 (8th Cir. 2019) (*quoting* United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003) (*en banc*)). The United States Supreme Court has set forth the standard as to voluntariness:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U.S. 742, 755 (internal quotation omitted).

This Court takes great care in ensuring all guilty pleas entered are knowing and voluntary. Such care was taken in this matter. On July 24, 2019, petitioner DeMarrias signed a plea agreement, agreeing to plead guilty to counts one and two of the Superseding Information, namely Abusive Sexual Contact and Felony Child Abuse and Neglect. PLEA AGREEMENT, Original Proceeding, doc. 73. On the same day DeMarrias signed a factual basis statement agreeing that the alleged facts were true. See FACTUAL BASIS STATEMENT, Original Proceeding, doc. 74. In the factual basis statement petitioner

admitted to the underlying conduct substantiating the first count of the superseding information: knowingly engaging in and attempting to engage in sexual contact with M.M.B., when the child was between eight and 12 years-old. He went on to admit to using his "fingers and hands to commit the sexual contact against M.M.B." Id. at 2. For count two, DeMarrias agreed to abusing, torturing, and cruelly punishing M.J.D. with a dangerous weapon when she was between the ages of seven and eight years-old.

But his agreement to the plea agreement and factual basis statement is not all DeMarrias provided to this Court as indicia of his actual guilt for the heinous acts taken against these defenseless children. At the change of plea hearing on July 29, 2019, petitioner testified, under oath, that the factual basis statement was true. Original Proceeding, doc. 82. The Court told DeMarrias at the change of plea hearing that at a later date this matter would reconvene to conduct a sentencing hearing where evidence would only need be proven by a preponderance of the evidence, and that this Court would decide what the facts are. Again, petitioner testified that he understood. And to ensure this plea was of his own accord, this Court asked DeMarrias if anybody had promised him what his ultimate sentence would be if he was to plead guilty to the two counts. Petitioner testified that nobody had.

Petitioner's representations during the plea hearing "'carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.'" Thompson v. United States, 872 F.3d 560, 566 (8th Cir. 2017) (*quoting* Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)). This Court advised DeMarrias of the consequences from pleading guilty, and carefully ensured that his guilty pleas were knowing and voluntary. His subsequent collateral attack does not venture close to whittling the strong presumption from which his prior guilty pleas were taken while under oath.

As the United States Supreme Court observed in Brady v. United States, 397 U.S. 742, 756–57 (1970):

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent

> likelihood of securing leniency should a guilty plea be offered and accepted . . . The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

Petitioner faults trial counsel for not pursuing expert witnesses within the field of unfounded and false abuse allegations. DeMarrias now contends that if he knew of such possible expert witness testimony, "he would have confidence to proceed with his innocence and proceed to trial." MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. 2255 TO VACATE AND SET ASIDE CONVICTION, doc. 3 at 5. Petitioner's guilty plea waived this claim. DeMarrias testified twice under oath at the change of plea hearing that the factual basis statement was true. The factual basis statement set forth that petitioner engaged in sexual acts with M.M.B. as well as using a dangerous weapon to abuse, torture, and cruelly punish M.J.D. See FACTUAL BASIS STATEMENT, Original Proceeding, doc. 74. This Court twice asked DeMarrias if the factual basis statement was true. Under oath, he testified that it was.

Further, DeMarrias now states that the factual basis statement was supposed to be altered to exclude any actual contact with the victims, which belies belief. But his time to edit the statement has expired years prior when he testified, *under oath*, that the veracity of the allegations set forth were true. Regardless, it challenges common sense that DeMarrias can plead guilty to sexual contact of M.M.B. that involved "*intentional touching*" and of abuse, torture, and cruelly punishing M.J.D. without physical contact. Id.

Petitioner now asserts that he was "assured" by trial counsel that he would receive a lenient sentence and that it was "agreed upon with the prosecution and the court." MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. 2255 TO VACATE AND SET ASIDE CONVICTION, doc. 3 at 5. But at his change of plea hearing this Court made clear that it was not bound by any agreed-upon sentence between the United States and

7

petitioner. And at that hearing, the petitioner testified, under oath, that he understood that this Court was not bound by plea negotiations between the parties or the advisory guideline range when determining the ultimate sentence. Again, DeMarrias testified he understood this.

Petitioner's new allegations as to ineffective assistance of counsel in failing to pursue expert witnesses, that the factual basis statement was not properly altered, and that he was promised a certain sentencing range do not detract from the finding that his plea was intelligently entered. Federal Rule of Criminal Procedure 11(b)(2) requires that a plea be voluntary. This Court determined that, based upon the petitioner's own sworn testimony, that his plea did not result from force, threats, or promises (other than promises in the plea agreement). Petitioner's allegations as to ineffective assistance of counsel in failing to investigate obtaining an expert witness do not affect the determination as to the voluntariness of his guilty plea. Rule 11(b)(3) requires that there be a factual basis for the plea. This Court determined that there was a factual basis for the guilty pleas. Petitioner's allegations as to ineffective assistance of counsel in failing to pursue such expert witness testimony does not affect the determination that there was a factual basis for the guilty pleas. Only ineffective assistance of counsel claims which affect the voluntary and intelligent nature of the plea would be cognizable in a case where the defendant has entered a guilty plea as done here. Accordingly, petitioner falls far short of overcoming the "'strong presumption'" owed to his prior sworn testimony before this Court. Thompson v. United States, 872 F.3d 560, 566 (8th Cir. 2017) (*quoting* Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)).

## B. Actual Innocence

### 1. *Procedural Gateway*

Petitioner also briefly raises an actual innocence claim shrouded in confusion. He fails to explain if he is requesting an actual innocence gateway because of a miscarriage of justice to overcome a procedural default under AEDPA for an underlying substantive claim, *or* instead is seeking a purported freestanding innocence claim. Either way, he falls far short.

Questions of actual innocence should have been raised and decided on direct appeal (which DeMarrias waived under his voluntary and intelligent guilty pleas). DeMarrias failed to do so. See Silk v. United States, 955 F.3d 681, 683 (8th Cir. 2020) ("There are strict limits, however, on when a guilty plea may be attacked on collateral review under § 2255. Ordinarily, where a defendant does not challenge his guilty plea on direct appeal, he may not do so in a collateral attack. 'Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.'") (*quoting* Bousley v. United States, 523 U.S. 614, 621 (1998)). The procedural barrier can be overcome under the "miscarriage of justice" exception to AEDPA's hurdles, but only "when petitioners have produced convincing new evidence of actual innocence." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). This is a narrow exception for only the rarest of matters.

Here, DeMarrias does not bring before the Court actual recantations but mere rumors of such. DeMarrias states that the two child victims have recanted to his father "as well as others," without explaining who these purported "others" are. See MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. 2255 TO VACATE AND SET ASIDE CONVICTION, doc. 3 at 5. Courts view with "suspicion" motions based on alleged recantation of witnesses. United States v. Rouse, 410 F.3d 1005, 1009 (8th Cir. 2005). "Recanted testimony that bears on a victim's credibility or directly on the defendant's guilt will warrant a new trial if it would probably produce an acquittal on retrial." United States v. Dogskin, 265 F.3d 682, 685 (8th Cir. 2001) (*citing* Lewis v. Erickson, 946 F.2d 1361, 1362 (8th Cir. 1991)). That is not the case here. This Court finds that any purported recantation is not credible. See Rouse, 410 F.3d at 1009 (noting that this skepticism towards recantations "'is especially applicable in cases of child sexual abuse where recantation is a recurring phenomenon,' particularly 'when family members are involved and the child has feelings of guilt or the family members seek to influence the child to change her story.'") (*quoting* United States v. Provost, 969 F.2d 617, 621 (8th Cir. 1992), *cert. denied*, 506 U.S. 1056 (1993)). These threadbare rumors of recantations do not venture close to meaningful new evidence questioning the countless acts of sexual touching and abuse that are at the heart of the counts to which petitioner pleaded guilty.

9

The alleged recantations (lacking notarized statements or other signs they were offered under penalty of perjury or legal recourse) do not come from the victims themselves but instead are hearsay upon hearsay. Petitioner has produced no affidavit from the victims themselves or any meaningful semblance of merit that one or both young girls have recanted their allegations at the heart of this matter for which knowing and voluntary guilty pleas were accepted. Because no new meaningful evidence has been presented, the miscarriage of justice exception to AEDPA's procedural default has no bearing on this matter. Next, the Court explains why no freestanding innocence claim can survive as well.

2. *Purported Freestanding Innocence Claim*

There is a stark difference between justifying a gateway through AEDPA's procedural impediments because of purported actual innocence and a freestanding innocence claim. Where the miscarriage of justice exception allows procedurally barred issues to be litigated on collateral review, freestanding claims of actual innocence reach even higher and are the core of the claim itself. The United States Supreme Court tackled the possible existence of a freestanding innocence claim in Herrera v. Collins, 506 U.S. 390 (1993), but the Court has never concluded if such a hypothetical freestanding claim does in fact exist, and, if so what would be necessary. See Dansby v. Hobbs, 766 F.3d 809, 816 (8th Cir. 2014) ("The threshold, if it exists, would require more convincing proof than the gateway standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence . . . Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.") (internal quotations omitted). If such a claim does exist, the Supreme Court has cautioned it would be an "extraordinarily high" bar to meet. Herrera, 506 U.S. at 417. Further, petitioners with far stronger claims than here have failed under review from the United States Court of Appeals for the Eighth Circuit. See Feather v. United States, 18 F.4th 982, 986–87 (8th Cir. 2021) (rejecting freestanding actual innocence claim where petitioner brought forward affidavits from four victims reasserting prior

10

recantations; experts questioning the qualifications, examination techniques, and medical conclusions of government's trial expert on pediatric assault; and evidence of juror bias for still failing to meet the high burden). It is so high, in fact, that it has never been reached. At the very least, it is a higher standard than that required of a "gateway" innocence claim to trump procedural default raised by AEDPA.

Whether freestanding innocence claims under Herrera exist at all, or are merely an endangered species, is an open question. DeMarrias' hearsay upon hearsay falls far short of surpassing the gateway innocence claim to litigate defaulted matters, and thus fails on any freestanding innocence claim.

### III. CONCLUSION

I have presided over more than 2,200 criminal cases involving over 2,700 defendants. The facts behind petitioner's two knowing and voluntary guilty pleas in this matter remain among the worst of the worst. These two little girls were subjected to "horrific" abuse beyond the pale of humanity for years. United States v. DeMarrias, 833 Fed. Appx. 30, 31 (8th Cir. 2020) (*unpublished*). Their home was their prison. No room, even the bathroom, was safe from the ever-watching eye of DeMarrias, who lived to shred the humanity from those too defenseless to fight back. M.M.B. and M.J.D. should be lauded for surviving what no man, woman, or child should experience, let alone at such a young age. From constant and vicious beatings to molestations to nonsensical "contracts" requiring children to choose which sibling would be the victim of the next beating, the petitioner showed blatant disregard for anything but his own desires of inflicting pain and suffering.

This Court carefully uncovered at petitioner's change of plea hearing that the two guilty pleas offered were knowing and voluntary. Under oath, DeMarrias agreed twice to the factual basis statement. Under oath petitioner acknowledged he had freely entered into the plea agreement, which this Court concluded was done knowingly and voluntarily, void of promises on what his ultimate sentence would be. DeMarrias' representations at the plea hearing "'carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.'" Thompson v. United States, 872 F.3d 560, 566

11

(8th Cir. 2017) (*quoting* Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997)). Nothing presented by the petitioner ventures close to disrupting this presumption.

While petitioner may be upset at his trial counsel for not securing a more favorable sentence, that is not sufficient grounds for an ineffective assistance claim. Thomas DeMarrias "committed heinous crimes." United States v. Tsarnaev, 595 U.S. __ (2022) (slip op., at 20). "The Sixth Amendment nonetheless guaranteed him" fair proceedings and constitutionally sound counsel. Id. "'A defendant is entitled to competent and effective legal counsel, nothing more.'" United States v. Harlan, 960 F.3d 1089, 1092 (8th Cir. 2020) (*quoting* United States v. Kelley, 774 F.3d 434, 439 (8th Cir. 2014). Because nothing presented here meaningfully challenges that trial counsel was anything but competent and effective, and because petitioner's two guilty pleas were offered knowingly and voluntarily, DeMarrias' motion should be denied and no certificate of appealability should be granted.

## IV. THE COURT WILL NOT HAVE AN EVIDENTIARY HEARING ON PETITIONER'S CLAIM

The Court will not conduct an evidentiary hearing on petitioner's claims, as "the motion and the files and records of the case conclusively show that petitioner is entitled to no relief." 28 U.S.C. 2255(b); see also Jackson v. United States, 956 F.3d 1001, 1006 (8th Cir. 2020) ("'No [evidentiary] hearing is required where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'") (*quoting* Sinisterra v. United States, 600 F.3d 900, 906 (8th Cir. 2010)). Summary dismissal is therefore appropriate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings.

IT IS HEREBY ORDERED that petitioner Thomas DeMarrias' motion to vacate, set aside, or correct sentence, Doc. 1, is denied.

**TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT:**

Petitioner pleaded guilty to Abusive Sexual Contact and Felony Child Abuse and was sentenced to 120 months imprisonment on each count, which were to run consecutively. His direct appeal following sentencing was denied. Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 contending that he received ineffective assistance of counsel and that he is actually innocent. I summarily denied the motion to vacate pursuant to Rule 4 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Petitioner did not and has not made a substantial showing of the denial of a constitutional right.

**IT IS HEREBY CERTIFIED** that there does not exist probable cause of an appealable issue with respect to the Court's order denying petitioner's § 2255 motion. Any application for a certificate of appealability is denied. This is no way hampers the petitioner's ability to request issuance of the certificate by a United States Circuit Judge pursuant to Federal Rule of Appellate Procedure 22.

DATED this 18th day of March, 2022.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge